Siobhan M. Stewart (SS 7449)
COVINGTON & BURLING LLP
1330 Avenue of the Americas
New York, NY 10019
(212) 841-1000 (phone)
(646) 441-9093 (fax)
sstewart@cov.com (email)

*Counsel for Plaintiffs Pearson Education,
Inc., John Wiley & Sons, Inc., Thomson
Learning Inc., and The McGraw-Hill
Companies, Inc.*

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 30 2007 ★

BROOKLYN OFFICE

**07     1348**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEARSON EDUCATION, INC., JOHN WILEY & SONS, INC., THOMSON LEARNING INC., and THE MCGRAW-HILL COMPANIES, INC., | Case No. 07 CV _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | **ECF CASE** |
| VALORE, INC. and ROBERT J. BRANNIGAN, JR. | GLEESON, T |
| Defendants. | AZRACK, J. |

Plaintiffs, Pearson Education, Inc., John Wiley & Sons, Inc., Thomson Learning Inc., and

The McGraw-Hill Companies, Inc., by their attorneys Covington & Burling LLP, for their

complaint against defendants Valore, Inc., and Robert J. Brannigan, Jr. allege:

## NATURE OF THE ACTION

1.      Plaintiffs are leading publishers of educational materials throughout the world.

Plaintiffs bring this action to stop the blatant violation of their rights, including their trademark

and copyright rights, by Defendants' advertising, sales, and facilitation of sales under Plaintiffs'

trademarks in the United States, without authorization, of (i) non-U.S. versions of Plaintiffs'

DC: 2467649-3

Works that are materially different from their authorized U.S. counterparts, and (ii) pirated electronic copies of Plaintiffs' copyrighted works, and by Defendants' false advertising concerning such non-U.S. versions of Plaintiffs' Works. Defendants' activities have been in bad faith and with full knowledge and awareness of Plaintiffs' rights and that their activities are in violation of applicable trademark, copyright, unfair competition, and false advertising laws.

2.     In order to protect their rights, Plaintiffs bring this action for direct and contributory trademark infringement in violation of Section 32 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114; direct and contributory false designation of origin, false representation, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A); direct and contributory false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); direct, contributory and vicarious copyright infringement in violation of the U.S. Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101 et seq.; and for violation of New York State statutory and common laws, including deceptive and unfair trade practices under N.Y. Gen. Bus. L. § 349. Plaintiffs seek preliminary and permanent injunctive relief and damages.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over the subject matter of this action under the Lanham Act, 15 U.S.C. § 1121, and the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 2201, and under principles of supplemental jurisdiction. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, a substantial part of the events giving rise to the claims occurred in the Eastern District of New York.

## PARTIES

4.      Plaintiff Pearson Education, Inc., a Delaware corporation with a principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458 ("Pearson Education"), is a global leader in integrated educational publishing.

5.      Plaintiff John Wiley & Sons, Inc., a New York corporation with a principal place of business at 111 River Street, Hoboken, New Jersey 07030 ("Wiley"), is a leading global publisher of print and electronic products.

6.      Plaintiff Thomson Learning Inc., a Delaware corporation with a principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902 ("Thomson"), is part of The Thomson Corporation, a global leader in providing integrated information solutions to higher education, corporate, government and professional customers.

7.      Plaintiff The McGraw-Hill Companies, Inc., a New York corporation with a principal place of business at 1221 Avenue of Americas, New York, New York 10020 ("McGraw-Hill"), is, among other things, a leading global publisher of print and electronic products. Pearson Education, Wiley, Thomson, and McGraw-Hill are collectively referred to herein as "Plaintiffs."

8.      Upon information and belief, Defendant Valore, Inc. d/b/a ValoreBooks and ValoreBooks.com, is a New York corporation with a principal place of business in this judicial district at 1123 85th Street, Brooklyn, New York 11228, which address has been used in connection with the acts complained of herein and in order to transact business in this judicial district, New York, and throughout the United States. Further, and upon information and belief, Defendant Valore, Inc. owns and operates book stores and warehouses in Fredonia, New York and Buffalo, New York. Defendant Valore, Inc. is also the registrant of the domain name

3

VALOREBOOKS.COM, and has provided the following WHOIS address:  P.O. Box 414, Fredonia, New York 14063.

9.     Upon information and belief, Defendant Robert J. Brannigan, Jr. is an individual residing in this judicial district with an address at 1123 85th Street, Brooklyn, New York 11228, which address has been used in connection with the acts complained of herein and in order to transact business in this judicial district, New York, and throughout the United States.

## FACTS COMMON TO ALL CLAIMS

### A.     Plaintiff Pearson Education

10.     With such renowned brands as Prentice Hall, Longman, Scott Foresman, Addison Wesley, NCS, and many others, Pearson Education and its numerous international affiliates are leading worldwide providers of print and electronic educational products.  Pearson Education provides quality content, assessment tools, and educational services in all available media, spanning the learning curve from birth through college and beyond.  Among its brands, Pearson Education publishes approximately 100,000 titles and develops and publishes thousands of new titles each year.  Pearson Education is also a global leader in online learning with nearly 2,000 textbook companion Web sites, the InformIT Web site for technology professionals, and the Family Education Network, the award winning online resource for parents, teachers, and children.

11.     Pearson Education is a subsidiary of Pearson PLC (NYSE: PSO), the international media company.  In addition to Pearson Education, Pearson PLC's primary operations include the Financial Times Group and the Penguin Group.  Pearson PLC is the owner of numerous federal trademark registrations incorporating or comprising the term PEARSON and others for a

4

wide variety of educational products, which registrations and marks are licensed exclusively to, and used exclusively by, Pearson Education under the supervision of Pearson PLC.

12.    Pearson Education has made continuous use of the trademarks PEARSON and PEARSON EDUCATION in interstate commerce since as early as August 1994 for a variety of goods and services related to its business as a publisher of educational materials.  Pearson Education spends in excess of a hundred million dollars annually in the worldwide advertisement and promotion of its goods and services under such marks.

13.    Pearson PLC, Pearson Education's ultimate parent company, is the owner of, and Pearson Education is a licensee with accompanying right and duty to protect and enforce Pearson PLC's rights therein, the following U.S. federal trademark registrations for the mark PEARSON, all of which are valid and subsisting:

- U.S. Reg. No. 2,599,724 for, *inter alia*, "Video recordings featuring documentary material or musical or dramatic performances; compact discs featuring music; interactive compact discs featuring musical and dramatic performances; compact discs featuring music and storytelling; blank video tapes; interactive video tapes featuring music; electronic multimedia publications, namely, fiction and non-fiction books and magazines on a variety of topics, namely, business, finance, entertainment and news, recorded on CD-ROM" in Int. Cl. 9, and "Publications, namely, fiction and non-fiction books on a variety of topics; reference books on a variety of subjects; dictionaries; directories, manuals, reports, magazines, journals, newspapers and newsletters, all featuring fiction or non-fiction on a variety of subjects, namely, business, finance, entertainment and news" in Int. Cl. 16, issued on July 23, 2002 with a priority date of October 2, 1995;

- U.S. Reg. No. 2,600,081 for "Publishing services, namely, publication of books and magazines; electronic publishing services, namely, publication of text and graphic works of others on CD-ROMs featuring fiction or non-fiction subjects" in Int. Cl. 41, issued on July 30, 2002 with a priority date of October 2, 1995;

- U.S. Reg. No. 2,652,792 for "interactive compact discs featuring scholastic educational subjects, namely, science, math and history; interactive video tapes, video cartridges, video cassettes, and video discs featuring scholastic educational subjects, namely, science, math and history; electronic multimedia publications recorded on CD-ROMs, namely, fiction books and non-fiction books and magazines featuring science, math and history" in Int. Cl. 9; "magazines, journals, newspapers and

5

newsletters featuring fiction and also featuring non-fiction in the field of science, math and history; and printed reports and manuals in the field of science, math and history" in Int. Cl. 16, issued on November 19, 2002 with a priority date of October 2, 1995;

- U.S. Reg. No. 2,679,355 for "Printed material, namely, study guides for educational purposes" in Int. Cl. 16, issued on January 28, 2003 with a first use date of October 8, 1999;

- U.S. Reg. No. 2,691,830 for "Educational services, namely, conducting teacher training workshops and seminars related to nationwide and state-specific curriculums for students in grades K-12; publication of teachers' workbooks and training manuals related to K-12 educational curriculums, textbooks, workbooks and magazines; providing an on-line computer database in the field of K-12 educational curriculums; electronic publishing services, namely, publication of text, software and graphic works of others on CD-ROMS and on-line featuring teaching materials in the field of K-12 educational curriculums" in Int. Cl. 41, issued on March 4, 2003 with a first use date of August 1994; and

- U.S. Reg. No. 2,694,359 for "Computer software for use in educational database management; and interactive computer software for use in educating children and adults in a variety of subjects, namely, science, math, history, social studies, reading, writing, business, computer software, health and finance" in Int. Cl. 9, issued on March 11, 2003 with a first use date of June 1997.

14.     Pearson Education and its predecessor-in-interest have made continuous use of the trademarks ADDISON WESLEY and ADDISON-WESLEY since as early as 1942 for a variety of goods and services related to its business as a publisher of educational materials. Pearson Education spends well in excess of sixty million dollars annually in the worldwide advertisement and promotion of its goods and services under those marks.

15.     Pearson Education's affiliate corporation Addison Wesley Longman, Inc. ("Addison Wesley"), is the owner of, and Pearson Education is a licensee with the accompanying right and duty to protect and enforce Addison Wesley's rights therein, of the following U.S. federal trademark registrations, all of which are valid and subsisting:

- U.S. Reg. No. 2,188,798 for the ADDISON WESLEY Mark for "nonfiction books featuring accounting, business, economics, mathematics, computer science, modern and classical languages, earth science, engineering, humanities, life science, physical

6

science, psychology, social science, English and literature, health and fitness, physics and statistics" in Int. Cl. 16, issued on September 15, 1998 with a first use date of 1942; and

- U.S. Reg. No. 2,400,130 for the ADDISON-WESLEY Mark for "nonfiction books featuring accounting, business, economics, mathematics, computer science, modern and classical languages, earth science, engineering, humanities, life science, physical science, psychology, social science, English and literature, health and fitness, physics and statistics" in Int. Cl. 16, issued on October 31, 2000 with a first use date of February 1942.

16.     Pearson Education and its predecessors-in-interest have made continuous use of the trademark PRENTICE-HALL (or PRENTICE HALL) in interstate commerce since as early as 1913 for a variety of goods and services related to its business as a publisher of educational materials.  Pearson Education spends well in excess of sixty million dollars annually in the worldwide advertisement and promotion of its goods and services under that mark.

17.     Pearson Education, itself and through its predecessor-in-interest Prentice-Hall, Inc. ("Prentice-Hall"), is the owner of the following U.S. federal trademark registrations for the mark PRENTICE-HALL, all of which are valid and subsisting:

- U.S. Reg. No. 1,332,044 for "Printed Matter-Namely, Books, Magazines, Newsletters, Looseleaf Reference Books, and Teaching and Instructional Material" in Int. Cl. 16, issued on April 23, 1985 with a first use date of 1913, and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065;

- U.S. Reg. No. 1,332,639 for "Mail Order Services Featuring the Sale of Books" in Int. Cl. 42, issued on April 23, 1985 with a first use date of November 1983, and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065; and

- U.S. Reg. No. 1,375,654 for "computer programs" in Int. Cl. 9, issued on December 17, 1985 with a first use date of March 1, 1983, and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

The registered trademarks owned by Pearson Education and its subsidiary, Prentice-Hall, identified herein, as well as the trademarks exclusively licensed to Pearson Education and referenced in paragraphs 11–15, are collectively referred to as the "Pearson Marks."

18.     Pearson Education is the owner or exclusive licensee of all copyright rights in the

following educational Works, including earlier editions of the Works:

| Title of Work | Author | © Reg. No. | Date of Reg. |
|---|---|---|---|
| Cost Accounting | Charles T. Horngren | TX-5-501-847 | March 26, 2002 |
| Management Information Systems | Kenneth C. Laudon & Jane P. Laudon | TX-5-725-172 | March 25, 2003 |
| Options, Future, and Other Derivatives | John C. Hull | TX-6-235-430 | October 6, 2005 |
| Marketing Management | Philip Kotler & Kevin Lane Keller | TX-6-150-569 | April 7, 2005 |
| Principles of Marketing | Philip Kotler & Gary Armstrong | TX-5-733-315 | April 8, 2003 |
| Computer Networks | Andrew S. Tanenbaum | TX-5-619-281 | September 5, 2002 |
| Discrete-Time Signal Processing | Alan V. Oppenheim, Ronald W. Schafer, & John R. Buck | TX-4-233-852 (2d ed.) | June 16, 1999 |
| Introduction to Electrodynamics | David J. Griffiths | TX-4-950-391 (3d ed.) | March 25, 1999 |
| Feedback Control of Dynamic Systems | Gene F. Franklin, J. David Powell, Abbas Emami-Nacini | TX-5-475-773 | January 15, 2002 |
| Wireless Communications Principles & Practices | Theodore S. Rappaport | TX-5-475-667 | January 15, 2002 |

| Title of Work | Author | © Reg. No. | Date of Reg. |
|---|---|---|---|
| Communications Systems Engineering | John G. Proakis & Masoud Salehi | TX-5-441-572 | September 26, 2001 |
| Digital Communications: Fundamentals and Applications | Bernard Sklar | TX-5-300-717 | April 26, 2001 |
| Adaptive Filter Theory | Simon Haykin | TX-5-446-396 | October 30, 2001 |
| RF Circuit Design Theory & Applications | Pavel Bretchko & Reinhold Ludwig | TX-5-148-992 (1st ed.) | March 14, 2000 |
| Digital Imaging Processing | Rafael C. Gonzalez & Richard E. Woods | TX-5-460-560 | November 27, 2001 |
| Electric Circuits | James W. Nilsson & Susan Riedel | Application submitted on November 29, 2006 | Pending |

With respect to the "Marketing Management" and "Principles of Marketing" titles, pursuant to Pearson Education's author agreement with the copyright owner, Philip Kotler, Pearson Education has the exclusive right to publish, distribute, and sell the work, and has the right and obligation to bring suit on behalf of the copyright owner. Pearson Education is also the owner of all copyright rights in a number of other educational titles that are the subject of the acts complained of herein. The Works listed above, and other such Pearson Education Works, as more fully described below, are collectively referred to herein as the "Pearson Education Works."

**B.    Plaintiff Wiley**

19.    Wiley, a leading global publisher, specializes in scientific, technical, and medical books and journals; professional and consumer books and subscription services; and textbooks and other educational materials for undergraduate and graduate students, as well as lifelong learners.  Wiley has approximately 22,700 active titles and about 400 journals, and publishes about 2000 new titles in a variety of print and electronic formats each year.  With about 3,150 employees worldwide, Wiley has operations in the United States, Europe (England and Germany and Russia), Canada, Asia, and Australia.  The Company has U.S. publishing, marketing, and distribution centers in New York, Colorado, Maryland, New Jersey, Illinois, Indiana, and Ohio. Wiley's worldwide headquarters are located in Hoboken, New Jersey.

20.    Wiley has made continuous use of WILEY as a trade name and/or a trademark since 1807 and has made continuous use of the trademark WILEY in interstate commerce since as early as 1900 for a variety of goods and services related to its business as a publisher of books. Wiley has also made continuous use of the following design mark (the "JW Design Mark") in interstate commerce for such goods and services since as early as 1950:



The WILEY mark and the JW Design Mark are referred to collectively herein as the "Wiley Marks."  Wiley spends in excess of $35 million dollars annually in the worldwide advertisement and promotion of its goods and services under the Wiley Marks.

21.    Wiley is the owner of the following U.S. federal trademark registrations for the Wiley Marks, all of which are valid and subsisting:

- U.S. Reg. No. 1,003,988 for the WILEY Mark for "books, encyclopedias, journals, pamphlets, publications, and audio visual materials consisting of sound film strips" in Int. Cls. 9, 16, and 28, with a first use date of January 1, 1900, issued on February 4, 1975 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065;

- U.S. Reg. No. 2,159,987 for the WILEY Mark for "educational pre-recorded sound and video recordings and film strips; CD-ROMs and electronic publications, namely, multi-media interactive software on a variety of subjects; computer software for use in database management, for use as a spread sheet and for use in the accounting and scientific fields" in Int. Cl. 9 with a first use date of April 15, 1971, and "computerized on-line services, namely, providing scientific journals, tables of contents, information for contributors, discussion for users, providing a wide range of scientific, technical, accounting, and general interest information via global computer information networks" in Int. Cl. 42, with a first use date of 1994, issued on May 26, 1988;

- U.S. Reg. No. 1,639,555 for the JW Design Mark for "books, encyclopedias, journals, pamphlets, loose-leaf volumes, and textbooks covering a wide variety of subject matter" in Int. Cl. 16, and "educational prerecorded audio and videotapes, film strips and computer programs" in Int. Cl. 9, both with a first use date of 1950, issued on April 2, 1991 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065; and

- U.S. Reg. No. 2,168,941 for the JW Design Mark for "educational pre-recorded sound and video recordings and film strips; CD-ROMs and electronic publications, namely, multi-media interactive software on a variety of subjects; computer software for use in database management, for use as a spread sheet and for use in the accounting and scientific fields" in Int. Cl. 9 with a first use date of 1950, and "computerized on-line services, namely, providing scientific journals, tables of contents, information for contributors, discussion for users, providing a wide range of scientific, technical, accounting, and general interest information via global computer information networks" in Int. Cl. 42 with a first use date of 1994, issued on June 30, 1998.

22.     Wiley is the owner of all copyright rights in the following educational Work, including earlier editions of the Work:

| Title of Work | Author | © Reg. No. | Date of Reg. |
|---|---|---|---|
| Elementary Differential Equations and Boundary Value Problems | William E. Boyce & Richard C. DiPrima | TX-5-981-457 | June 7, 2004 |

11

Wiley is also the owner of all copyright rights in a number of other educational Works that are the subject of the acts complained of herein.  The Work listed above, and other such Wiley Works, as more fully described below, are collectively referred to herein as the "Wiley Works."

## C.    **Plaintiff Thomson**

23.    Thomson is among the world's largest providers of tailored learning solutions.  In the academic marketplace, Thomson serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments.  In the professional and corporate training marketplaces, Thomson offers adult education and certification materials for corporations, training centers, and individuals. Thomson products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.  Thomson spends in excess of $60 million dollars annually in the worldwide advertisement and promotion of its goods and services sold under its marks.

24.    Thomson has made continuous use of the trademark THOMSON LEARNING in interstate commerce since as early as 1992 for a variety of goods and services related to its business as a publisher of books.

25.    Thomson is the exclusive licensee of the following U.S. federal trademark registrations for the mark THOMSON LEARNING, both of which are owned by Thomson Canada Limited and both of which are valid and subsisting:

- U.S. Reg. No. 1,839,356 for "books; namely, a series of non-fiction illustrated books for children, pre-kindergarten through high school" in Int. Cl. 16 with a first use date of August 31, 1992, issued on June 14, 1994 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065; and

- U.S. Reg. No. 2,810,953 for, *inter alia*, "Printed publications, namely, textbooks, course materials, study guides, magazines and case studies featuring educational information in the fields of business, chemistry, computer science, economics, engineering, mathematics, and nursing directed to the primary, secondary, college and corporate educational markets" in Int. Cl. 16, and "software containing educational

and instruction material in the fields of business, chemistry, computer science, economics, engineering, mathematics, and nursing directed to the primary, secondary, college and corporate educational markets" in Int. Cl. 9, both with a first use date of March 1, 2000, issued on February 3, 2004.

26.     Thomson has made continuous use of the following design trademark in interstate commerce since as early as 1993 for a variety of goods and services related to its business as a publisher of books:



(the "ITP Design Mark").

27.     Thomson is the owner of the following U.S. federal trademark registration for the ITP Design Mark, which is valid and subsisting:

- U.S. Reg. No. 1,866,136 for "CD-ROM discs, prerecorded audio and video cassettes, and computer software containing reference materials and educational information in the fields of business, chemistry, computer science, economics, engineering, math, nursing, philosophy, physics, psychology and science" in Int. Cl. 9, and "Reference books and textbooks in the fields of business, chemistry, computer science, economics, engineering, math, nursing, philosophy, physics, psychology and science; and newsletters, brochures, directories and magazines in the field of primary, secondary, college and professional education" in Int. Cl. 16, both with a first use date of May 18, 1993, issued on December 6, 1994 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

28.     Thomson has made continuous use of the trademark PWS in interstate commerce since as early as 1980 for a variety of goods and services related to its business as a publisher of books.  Thomson has also made continuous use of the following design mark (the "PWS Design Mark") in interstate commerce since as early as 1993 for such goods and services:



The PWS Mark and the PWS Design Mark are referred to collectively herein as the "PWS

Marks."

    29.    Thomson is the owner of the following U.S. federal trademark registrations for

the PWS Marks, all of which are valid and subsisting:

- U.S. Reg. No. 2,183,184 for, *inter alia*, "[b]ook imprint and publications, namely, books directed to teachers, students, institutions of post secondary education and professional training covering the topics of mathematics, engineering and computer science" in Int. Cl. 16, with a first use date of January 1980, issued on August 25, 1998 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065; and

- U.S. Reg. No. 2,146,913 for, *inter alia*, "[b]ook imprint and publications, namely, books directed to teachers, students, institutions of post secondary education and professional training covering the topics of mathematics, engineering and computer science" in Int. Cl. 16, with a first use date of January 1993, issued on March 31, 1998 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

The Thomson registered trademarks identified herein are collectively referred to as the

"Thomson Marks."

    30.    Thomson is the owner of all copyright rights in the following educational Works,

including earlier editions of the Works:

| Title of Work | Author | © Reg. No. | Date of Reg. |
| --- | --- | --- | --- |
| Calculus Early Transcendentals | James Stewart | TX 5-641-915 | January 15, 2003 |
| Finance for Executives Managing for Value Creation | Gabriel A. Hawawini | TX 6-116-866 | February 7, 2005 |
| Principles of Instrumental Analysis | Douglas A. Skoog | TX 4-718-643 | February 9, 1998 |
| Sales Management Analysis and Decision Making | Thomas N. Ingram | TX 6-318-712 | January 9, 2006 |

Upon information and belief, Thomson is also the owner of all copyright rights in a number of

other educational Works that are the subject of the acts complained of herein. The Works listed

above, and other Thomson Works, as more fully described below, are collectively referred to

herein as the "Thomson Works."

**D.      Plaintiff McGraw-Hill**

31.      McGraw-Hill is among the world's leaders in the financial services, education and

business information markets, with leading brands such as Standard & Poor's, BusinessWeek

and McGraw-Hill Education. In the academic marketplace, McGraw-Hill addresses virtually

every aspect of the education market from pre-K through professional learning. McGraw-Hill is

also a leading provider of reference and trade publishing for the medical, business, engineering,

and other professions. McGraw-Hill products and services are sold throughout the world,

through direct channels and via a worldwide network of distributors. McGraw-Hill spends

substantial monies annually in the worldwide advertisement and promotion of its goods and

services under its marks.

32.      McGraw-Hill has made continuous use of the trademark MCGRAW-HILL in

interstate commerce since as early as 1909 for a variety of goods and services related to its

business as a publisher of books. McGraw-Hill has also made continuous use of the trademarks

THE MCGRAW-HILL COMPANIES, and THE MCGRAW-HILL COMPANIES and Design in

interstate commerce since as early as 1995, and 2002 respectively. McGraw-Hills trademarks

are collectively referred to herein as the "McGraw-Hill Marks."

33.      McGraw-Hill is the owner of the following U.S. federal trademark registrations

for the McGraw-Hill Marks, all of which are valid and subsisting:

- U.S. Reg. No. 1,350,345 for the MCGRAW-HILL Mark for "Books, pamphlets,
  brochures, magazines, newsletters all dealing with a variety of subjects; educational

kits for schools, businesses, industry and government agencies, primarily composed of books, pamphlets, brochures, and testing sheets" in Int. Cl. 16, with a first use date of July 1909, issued on July 23, 1985 and which is now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065;

- U.S. Reg. No. 3,103,212 for THE MCGRAW-HILL COMPANIES Mark for, *inter alia*, "House mark for fiction and non-fiction books on a variety of topics and books, pamphlets, magazines, manuals, newsletters on a variety of topics; a full line of education kits consisting primarily of books, pamphlets, brochures, tests and testing sheets on a variety of topics for business and schools ranging from pre-school to post-secondary" in Int. Cl. 16, issued on June 13, 2006, with a first use date of April 26, 1995; and

- U.S. Reg. No. 3,143,034 for THE MCGRAW-HILL COMPANIES and Design Mark for, *inter alia*, "House mark for fiction and non-fiction books on a variety of topics and books, pamphlets, magazines, manuals, newsletters on a variety of topics; a full line of educational kits consisting primarily of books, pamphlets, brochures, tests and testing sheets on a variety of topics for business and schools ranging from pre-school to post-secondary" in Int. Cl. 16, issued on September 12, 2006, with a first use date of April 2002.

34. McGraw-Hill is the owner of all copyright rights in the following educational

Works, including earlier editions of the Works:

| Title of Work | Author | © Reg. No. | Date of Reg. |
|---|---|---|---|
| Managerial Accounting | Ray H. Garrison | TX 5-6740624 | 2003 |
| Foundations of Financial Management | Stanley Block & Geoffrey A. Hirt | TX 6-443-623 | 2006 |
| Understanding Business | William G. Nickels, et al. | TX 6-220-918 | 2002 |
| Biology | Peter H. Raven, et al. | TX 5-953-607 | 2005 |
| International Business: The Challenge of Global Competition | Donald Ball, et al. | TX 6-217-610 | 2005 |

Upon information and belief, McGraw-Hill is also the owner of all copyright rights in a number of other educational Works that are the subject of the acts complained of herein. The Works listed above, and other McGraw-Hill Works, as more fully described below, are collectively referred to herein as the "McGraw-Hill Works."

35.     Through extensive marketing, advertising and promotion of the Works, Plaintiffs have created and own significant goodwill in their respective Works and in the trademarks under which their respective works are marketed and sold.

**E.     The Works**

36.     The Pearson Education Works, Wiley Works, Thomson Works, and McGraw-Hill Works (collectively the "Works"), are original works of authorship embodying copyrightable subject matter. Plaintiffs have at all times complied with the Copyright Act with respect to said Works, and their copyrights in said Works are subsisting, valid, and fully enforceable. Plaintiffs own or are the exclusive licensees of the U.S. copyright rights in their respective Works.

37.     As owner or exclusive licensee of all rights under copyright in the Works, Plaintiffs are entitled to all of the exclusive rights and remedies accorded by the U.S. Copyright Act to a copyright owner.

38.     The Works referenced herein are authorized for sale in the United States and are of the highest quality. The Works authorized for sale in the United States (hereafter "U.S. editions") are printed on durable paper in bright inks and feature printed diagrams and photographs in numerous colors. The U.S. editions of the Works are generally printed on strong hard-cover materials with glossy protective coatings and, in some cases, contain extra features such as sewn ribbon bookmarks. Certain of the U.S. editions are also accompanied by academic

17

supplements, such as CD-ROMs and study guides, or by other specific benefits for the purchaser such as prepaid subscriptions to educational web sites.

39.     Plaintiffs often create different versions of their Works, depending on the intended ultimate place of sale.  The Works manufactured and/or authorized for sale in foreign countries (hereafter "foreign versions") frequently differ in material ways from the U.S. editions. For example, foreign versions of the Works are often printed on thinner paper, have different cover and jacket designs and graphics, have different binding, are printed in fewer colors, if any, have different ISBN numbers, and contain conspicuous legends indicating that the foreign version is authorized for sale only in a particular country or region.  Also, foreign versions of the Works often will not be accompanied by supplements such as CD-ROMs or study guides that are often included with authorized U.S. editions.

40.     Foreign versions of the Works referenced herein are all manufactured abroad. Such foreign versions of the Works are authorized for sale in specific foreign countries or regions, but not in the United States.

## DEFENDANTS' UNLAWFUL AND INFRINGING CONDUCT

### A.     Defendants' Online "Marketplace"

41.     Defendants Valore, Inc. d/b/a ValoreBooks and ValoreBooks.com and Robert J. Brannigan, Jr. (the "Defendants") own and operate the web site ValoreBooks.com, through which Defendants offer their "Marketplace selling services" or "platform for third-party sellers and buyers to negotiate and complete transactions" for books and other materials.

42.     Sellers who wish to participate in selling materials through Defendants' ValoreBooks.com web site must accept the terms of a "Seller Participation Agreement," which requires, among other things, that a seller "may not list any item or link or post any related

18

material that . . . infringes any third-party intellectual property rights (including copyright,

trademark, patent, and trade secrets) . . . or is counterfeited, illegal, stolen, or fraudulent." The

Seller Participation Agreement further reserves the right of Defendants to investigate and

"monitor any activity and content associated with [their] Site" and "to immediately halt any fixed

price sale, prevent or restrict access to the Site or the Services, or take any action to restrict

access to or availability of objectionable material, any inaccurate listing, any inappropriately

categorized items, or any unlawful items."

43.    Defendants collect a fifteen percent (15%) fee for every item sold by a third party

through their ValoreBooks.com web site.

44.    Consumers who visit the Defendants' web site can search for particular textbook

titles. The textbook, if available, is then displayed on the web site page. A photograph of the

hardcover U.S. edition of the textbook and accompanying information about the U.S. edition is

featured, including the U.S. edition ISBN number and list price. Consumers may then choose

from various listings for the textbook including, "Brand New Items," "Like New Items," "Very

Good Items," "Good Items," "International Editions," "Study Guide," and "Electronic Study

Guide." Prices and descriptions for the various copies of the textbook also appear in connection

with the individual sellers who have listed the textbook for sale on the ValoreBooks.com web

site.

45.    Consumers can purchase textbooks listed for sale on Defendants' web site by

clicking on the "Buy!" button next to the book they wish to purchase. After the consumer has

completed his or her purchase through Defendants' web site, the individual sellers then ship the

book(s) to whatever location the buyer designates.

**B.**   **Sale of Infringing Foreign Versions of Plaintiffs' Works**

46.   Plaintiffs have never authorized Defendants, or the individual sellers posting materials for sale on Defendants' web site, to import into or distribute in the United States, foreign versions of the Works not intended for U.S. consumers.

47.   Nevertheless Defendants knowingly advertise and sell, and have induced, caused, and materially contributed to the sale of, foreign versions of Plaintiffs' Works bearing Plaintiffs' trademarks (hereinafter "Infringing Works") in the United States through their web site ValoreBooks.com.   Defendants have further failed to supervise the actions of third party sellers utilizing Defendants' web site to sell such Infringing Works in the United States.

48.   Numerous Infringing Works have been and are being advertised and listed for sale on Defendants' web site, including the following:

| Title | Copyright Owner / Exclusive Licensee |
| --- | --- |
| Biology | McGraw-Hill |
| Foundations of Financial Management | McGraw-Hill |
| International Business: The Challenge of Global Competition | McGraw-Hill |
| Managerial Accounting | McGraw-Hill |
| Understanding Business | McGraw-Hill |
| Adaptive Filter Theory | Pearson Education |
| Communication Systems Engineering | Pearson Education |
| Computer Networks | Pearson Education |
| Cost Accounting | Pearson Education |
| Digital Communications: Fundamentals and Applications | Pearson Education |
| Digital Image Processing | Pearson Education |
| Electric Circuits | Pearson Education |
| Feedback Control of Dynamic Systems | Pearson Education |
| Management Information Systems | Pearson Education |
| Marketing Management | Pearson Education |
| Options, Futures, and Other Derivatives | Pearson Education |
| Principles of Marketing | Pearson Education |
| Wireless Communications: Principles and Practices | Pearson Education |

| Title | Copyright Owner / Exclusive Licensee |
| --- | --- |
| Calculus Early Transcendentals | Thomson |
| Finance for Executives Managing for Value Creation | Thomson |
| Principles of Instrumental Analysis | Thomson |
| Sales Management Analysis and Decision Making | Thomson |
| Elementary Differential Equations and Boundary Value Problems | Wiley |

49.     The Infringing Works listed above are all manufactured abroad and all are of

materially different quality from their U.S. edition counterparts.

50.     Defendants actively encourage the sale of the Infringing Works through their

online "Marketplace." For example, Defendants provide for and permit the categorical listing of

"International Edition" textbooks for sale. Defendants fail, however, to inform U.S. consumers

that many of the "International Editions" advertised for sale, and all of the Infringing Works

listed above, are only authorized for sale in certain foreign countries, and not authorized for sale

in the United States.

51.     Indeed, until very recently, Defendants' web site expressly encouraged the sale of

"International Editions" by misleadingly and incorrectly asserting:  "According to the U.S.

Copyright Act, if a party legally obtains lawfully made copies, whether inside or outside the US,

that party has the right to 'sell or otherwise dispose' of the copies without needing the

authorization of the copyright holder." In fact, it is unlawful for a party to import for

commercial purposes a copyrighted work manufactured abroad and intended for sale only

outside the United States, even if a first sale of that work has already occurred abroad.

52.     In addition, Defendants promote the sale of "International Editions" through the

use of false and materially misleading graphics, photographs, ISBN numbers, product

descriptions, and the omission of material information.  For example, the descriptions of the "International Editions" falsely contain photographs of the counterpart hardcover U.S. editions. In contrast, covers for the foreign versions contain different graphics and conspicuous legends indicating that the title is authorized for sale only in a particular country or region or other similar language.  Further, the ISBN numbers listed for each of the "International Edition" textbooks falsely identify the ISBN numbers for the U.S. editions, not the ISBN numbers for the foreign versions.  Moreover, Defendants fail to disclose the fact that titles manufactured and/or authorized for sale in foreign countries frequently differ in material ways from the U.S. editions (e.g., often printed on thinner paper, having different cover and jack designs, having different binding, and printed in fewer colors, if any).  Further, upon information and belief, Defendants have no policy requiring that sellers of foreign versions of U.S. editions disclose these material facts in connection with their individual postings on Defendants' web site.

53.    Defendants' actions have caused and continue to cause consumers to become confused and/or to otherwise think they are purchasing authorized U.S. editions of the Works, when in fact they are purchasing foreign versions of the Works, as evidenced by the following sampling of comments posted on the ValoreBooks.com web site:

- "[T]he book was not as described.  I [received] a soft cover international version I cannot even use because the wording and problems at the end of the chapters are different than the hardcover U.S. version."  March 12, 2007.

- "I've been cheated!  . . . Cover picture and ISBN doesn't match.  It is Chinese version & important tables, index are missing."  March 9, 2007.

- "The description is very misleading…the item you get is only 1 text book which is an [I]ndian edition . . ."  March 8, 2007.

- "You guys done fraud.  You explained it as hardcover and had picture of US edition.  But you guys sent Chinese edition [with] soft cover.  An absolute fraud." March 7, 2007.

22

- "The picture doesnt [sic] match the book. The picture depicts the U.S. edition, but they sent me the Special Indian Edition." March 4, 2007.

- "The promised book was a hardcover edition and what I received was a soft bound low priced edition. This edition is actually illegal [sic] in the states." February 28, 2007.

- "Book had different cover than advertised." February 17, 2007.

- "[C]over is different from picture, poor quality paper, it has note saying not supposed to be sold in the US." February 2, 2007.

- "This is a black and white paper back version. They did not mention it's black and white." December 5, 2006.

- "[T]he international addition [sic] is NOT like the US edition as they stated. I have had to photo copy about %25 of the material from a classmate." November 17, 2006.

- "A bit alarmed at the disclaimer on the back of the book indicating it should not be sold in the US." November 13, 2006.

- "NOT AS ADVERTISED or invoiced. Received a softcover for use in India/Pakistan/Nepal etc. only. I ordered from the USA. Book was in black & white and had no accompanying CD-rom." November 5, 2006.

- "I got an Indian edition, not International edition. [W]rong pages, wrong contents." November 4, 2006.

- "[P]roblem sets in the international edition are labeled in a DIFFERENT ORDER than those of the US version. Seller said the books were IDENTICAL." October 23, 2006.

- "The item I received is different from the image shown on the website. The book is an international edition rather than hardcovered. It's [a] deception!!" October 19, 2006.

- "[T]he quality sucks. But that's not the seller's fault. Its [sic] Prentice Hall India's fault." October 13, 2006.

- "International Ed. does not have all the same practice problems." October 1, 2006.

- "This book was not as describe, [i.e.,] same content in different packaging. The exercises are completely different from U.S. edition." September 21, 2006.

- "The seller claimed that the International version of this book was the same as the standard edition, but they are NOT!!" September 18, 2006.

- "You did a slick bait and switch on me, advertising one book, a hardcover, and selling me another one, (softcover). I don't care WHAT the seller says he is selling, you were advertising a hardcover." September 8, 2006.

- "[W]as an internation[al] edition book as stated, but NOT same content as U.S. edition (as also stated) so I returned the book and am awaiting a refund from this seller." August 9, 2006.

- "They sent the books fine but they didn't mention (at least not in any easy to find place) that the books were international editions." August 7, 2006.

- "The international and US edition are NOT the same!!!!!!! Nearly every ad on your site says it is. . . ." July 15, 2006.

- "The item was represented as the hardcover edition. What I received was the soft cover edition and a completely different ISBN number." June 29, 2006.

- "pages thin and often see through, makes reading hard . . . ." June 24, 2006.

- "Book received not as advertised. Shows a U.S. book but it comes with foreign writing. . . ." May 2, 2006.

- "The book itself is fine but it gives a headache when you flip through exercises. the numbers are so different [sic] from the original book that sometime[s] I think I should've spent some more money for the [original]." April 25, 2006.

- "This International edition DOES NOT HAVE THE SAME EXACT CONTENT OF THE US EDITION. This does not have any colored illustrations, and the statement on the website is therefore MISLEADING." April 3, 2006.

## C.    Sale of Pirated Electronic Versions of Plaintiffs' Works

54.    Defendants also knowingly advertise and sell, and have induced, caused, and materially contributed to the sale of, pirated electronic copies of Plaintiffs' Works bearing Plaintiffs' trademarks through their web site ValoreBooks.com. Defendants have further failed to supervise the actions of third party sellers utilizing Defendants' web site to sell such pirated copies of Plaintiffs' Works.

55.     Defendants' web site contains postings for "Electronic Study Guides."  Upon information and belief, such "Electronic Study Guides" are electronic copies of legitimate copyrighted works in which Plaintiffs own, or are the exclusive licensees with all right and duty to protect and enforce, the copyright rights, which bear Plaintiffs' trademarks and which have been pirated and reproduced in electronic form without authorization.

56.     For example, Defendants have listed for sale on their web site the following purported "Electronic Study Guides" for Plaintiffs' Works:

| Title | Copyright Owner / Exclusive Licensee |
|---|---|
| Antennas for All Applications | McGraw-Hill |
| Digital Communications | McGraw-Hill |
| Electric Machinery Fundamentals | McGraw-Hill |
| Fundamentals of Digital Logic with Verilog Design | McGraw-Hill |
| Fundamentals of Electric Circuits | McGraw-Hill |
| Managerial Accounting | McGraw-Hill |
| Vector Mechanics for Engineers | McGraw-Hill |
| Adaptive Filter Theory | Pearson Education |
| Advanced Modern Engineering Mathematics | Pearson Education |
| Communication Systems Engineering | Pearson Education |
| Computer Networks | Pearson Education |
| Digital Communications: Fundamentals and Applications | Pearson Education |
| Digital Image Processing | Pearson Education |
| Discrete-Time Signal Processing | Pearson Education |
| Electric Circuits | Pearson Education |
| Engineering Mechanics Dynamics | Pearson Education |
| Engineering Mechanics Statics | Pearson Education |
| Feedback Control of Dynamic Systems | Pearson Education |
| First Course in Probability | Pearson Education |
| Introduction to Quantum Mechanics | Pearson Education |
| Introduction to Electrodynamics | Pearson Education |
| RF Circuit Design: Theory and Applications | Pearson Education |
| Wireless Communications: Principles and Practice | Pearson Education |
| Calculus Early Transcendentals | Thomson |
| Automatic Control Systems | Wiley |
| Communications Systems | Wiley |
| Control Systems Engineering | Wiley |
| Device Electronics for Integrated Circuits | Wiley |
| Digital Signal Processing | Wiley |

| Title | Copyright Owner / Exclusive Licensee |
|---|---|
| Engineering Mechanics | Wiley |
| Fundamentals of Electromagnetics with Engineering Applications | Wiley |
| Microwave and Rf Design of Wireless Systems | Wiley |
| Microwave Engineering | Wiley |
| Principles of Communication: Systems, Modulation and Noise | Wiley |

The materials are described as "solutions" in PDF format and "solutions ebook[s]."  Upon information and belief, once purchased, the materials are delivered in CD-ROM or DVD format, or by email with a PDF attachment.  Such materials are unauthorized reproductions of Plaintiffs' Works, and are being sold in violation of Plaintiffs' copyright and trademark rights.

57.     Upon information and belief, Defendants web site contains additional and similar postings for other illegitimate "electronic" reproductions of Plaintiffs' Works, in direct violation of Plaintiffs' copyright and trademark rights.

**D.     Defendants Unlawful Acts Have Been Knowing, Willful, And In Bad Faith**

58.     In August 2006, after learning of Defendants' illegal conduct, Plaintiffs demanded that Defendants identify and remove all postings for the Infringing Works from their web site, and that Defendants take further action to prevent the future sale of the Infringing Works.  Plaintiffs further demanded that Defendants take action to ensure that the descriptions affiliated with each posting on their web site accurately describe the Work offered for sale by, for example, using accurate ISBN numbers and accurate cover photographs.  Plaintiffs' initial demand letter contained a comprehensive table identifying the title and ISBN number of various Infringing Works that were unlawfully posted for sale on Defendants' web site.  Plaintiffs further provided printouts of these Infringing Works as they appeared on Defendants' web site.

59.     Nearly a month after Plaintiffs made their demand, and after the peak of textbook season was over, Defendants responded by attempting to assert that they were shielded from liability under the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.  Defendants further asserted, incredibly, that Plaintiffs "have not provided proper identification of the copyrights that your clients believe Valore is violating or as to which they believe that Valore is [a] contributing infringer" and "have not provided proper identification of the goods involved."  Notwithstanding Defendants' remarkable assertions, Defendants also expressed a desire to create and implement a policy that would remedy the existing and future infringing conduct.

60.     Thereafter, and in reliance upon Defendants' apparent desire to resolve the matter without litigation, Plaintiffs agreed to enter into discussions with Defendants about how to remedy Plaintiffs' concerns and to prevent further infringing conduct.  Counsel for the parties engaged in several telephone conversations in October 2006.  Thereafter, Plaintiffs sent multiple voicemails, emails, and subsequent letters in an attempt to further discussion, all of which went unacknowledged.

61.     Further, and despite having received repeated notices and requests from Plaintiffs that Defendants remove the Infringing Works listed for sale on Defendants' web site, Defendants appear to have taken no action to suspend or terminate the sale of such Infringing Works or the accounts of the sellers of the Infringing Works and/or have failed to monitor, remove, or prevent new or renewed listings for the Infringing Works on their web site.

62.     Upon information and belief, as a result of Defendants' conduct as set forth herein, Defendants have received substantial revenues and substantial profits arising out of their

use, exploitation, promotion, and facilitation of the sale of the Infringing Works, to which they are not entitled.

63.     In addition, and despite having also received repeated notices and requests from Plaintiffs that Defendants adopt, implement, and enforce a policy that conforms to the requirements of the DMCA respecting notice and take-down of infringing works, Defendants have failed to take such actions, and are, therefore, not entitled to the safe-harbor provisions offered under the DMCA.  For example, upon information and belief, Defendants have failed (a) to designate with the U.S. Copyright Office a registered agent to receive notifications of infringement of intellectual property rights, (b) to adopt, provide notice of, and implement procedures for receipt of reports and/or notice of infringing listings, (c) to proactively monitor and remove reported infringing listings, (d) to adopt, provide notice of, and implement a policy for suspension of repeated offenders, and (e) to adopt, provide notice of, and implement a policy for disclosure of identity and contact information of alleged infringers.

64.     Upon information and belief, and for the reasons set forth herein, Defendants' unlawful conduct has been knowing, willful, and in bad faith.

## FIRST CLAIM FOR TRADEMARK INFRINGEMENT
## UNDER SECTION 32 OF THE LANHAM ACT

65.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 64 above as if fully set forth herein.

66.     Over many years of extensive use in connection with books and other printed materials, Plaintiffs' federally registered Pearson Education Marks, Wiley Marks, Thomson Marks, and McGraw-Hill Marks (referred to collectively as "Plaintiffs' Registered Marks") have become among the most well-known in the United States and in the world.  Plaintiffs have established strong reputations and substantial goodwill in Plaintiffs' Registered Marks by reason

28

of the success and reputation of goods sold under Plaintiffs' Registered Marks, immediately indicating to the public that products and services featuring such marks come from, or are sponsored or approved by, Plaintiffs.

67.     The Infringing Works, which are physically and materially different from the U.S. editions of the Works authorized for sale in the United States, feature Plaintiffs' Registered Marks on goods which are not authorized to be sold in the United States and have caused, and are likely to continue to cause, confusion, or mistake, or deception.

68.     Defendants' unauthorized advertising and sale in the United States of physically and materially different goods bearing marks that are identical to Plaintiffs' Registered Marks constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

69.     Defendants' unauthorized advertising and sale in the United States of pirated electronic copies of Plaintiffs' Works bearing Plaintiffs' Registered Marks constitutes counterfeiting and trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

70.     On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

71.     Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public until enjoined by this Court. Plaintiffs have no adequate remedy at law.

72.     Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the unauthorized use and exploitation of Plaintiffs' Registered Marks to which they are not entitled, and Plaintiffs have also suffered damages as a result of

Defendants' unauthorized use of Plaintiffs' Registered Marks, for which Defendants are responsible.

## SECOND CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT

73.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 above as if fully set forth herein.

74.    Over many years of extensive use in connection with books and other printed materials, Plaintiffs' Registered Marks have become among the most well-known in the United States and in the world.  Plaintiffs have established strong reputations and substantial goodwill in Plaintiffs' Registered Marks by reason of the success and reputation of goods sold under Plaintiffs' Registered Marks, immediately indicating to the public that products and services featuring such marks come from, or are sponsored or approved by, Plaintiffs.

75.    The Infringing Works, which are physically and materially different from the U.S. editions of the Works authorized for sale in the United States, feature Plaintiffs' Registered Marks on goods which are not authorized to be sold in the United States and have caused, and are likely to continue to cause, confusion, or mistake, or deception.

76.    Defendants have knowingly induced, caused, and materially contributed to the unauthorized advertising and sale in the United States of physically and materially different goods bearing marks that are identical to Plaintiffs' Registered Marks, and are continuing to do so, in violation of Plaintiffs' rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

77.    Defendants have knowingly induced, caused, and materially contributed to the unauthorized advertising and sale in the United States of pirated electronic copies of Plaintiffs' Works bearing Plaintiffs' Registered Marks, and are continuing to do so, in violation of Plaintiffs' rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

78.    On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

79.    Defendants' knowing and material contribution to the unauthorized use of Plaintiffs' Registered Marks is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public until enjoined by this Court.  Plaintiffs have no adequate remedy at law.

80.    Upon information and belief, Defendants have received substantial revenues and substantial profits resulting from their contribution to the unauthorized use and exploitation of Plaintiffs' Registered Marks to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' contribution to such unauthorized use and exploitation, for which Defendants are responsible.

### THIRD CLAIM FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND FALSE REPRESENTATION UNDER SECTION 43(a) (1)(A) OF THE LANHAM ACT

81.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 80 above as if fully set forth herein.

82.    Over many years of extensive use in connection with books and other printed materials, Plaintiffs' registered and unregistered marks (collectively "Plaintiffs' Marks") have become among the most well-known in the United States and in the world.  Plaintiffs have established strong reputations and substantial goodwill in Plaintiffs' Marks by reason of the success and reputation of goods sold under Plaintiffs' Marks, immediately indicating to the public that products and services featuring such marks come from, or are sponsored or approved by, Plaintiffs.

83.     The Infringing Works, which are physically and materially different from the U.S. editions of the Works authorized for sale in the United States, feature Plaintiffs' Marks on goods which are not authorized to be sold in the United States and have caused, and are likely to continue to cause, confusion, or mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs or as to the sponsorship or approval of the Infringing Works by Plaintiffs.

84.     Defendants' unauthorized advertising and sale in the United States of physically and materially different goods bearing marks that are identical to Plaintiffs' Marks constitutes trademark infringement, unfair competition, and false designation of origin or false representation in violation of Plaintiffs' rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Defendants' unauthorized advertising and sale in the United States of pirated electronic copies of Plaintiffs' Works bearing Plaintiffs' Marks constitutes counterfeiting, trademark infringement, unfair competition, and false designation of origin or false representation in violation of Plaintiffs' rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

86.     On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

87.     Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public until enjoined by this Court. Plaintiffs have no adequate remedy at law.

88.     Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the unauthorized use and exploitation of Plaintiffs' Marks to

which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants'
unauthorized use of Plaintiffs' Marks, for which Defendants are responsible.

### FOURTH CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND FALSE REPRESENTATION UNDER SECTION 43(a)(1)(A) OF THE LANHAM ACT

89.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1
through 88 above as if fully set forth herein.

90.     Over many years of extensive use in connection with books and other printed
materials, Plaintiffs' Marks have become among the most well-known in the United States and in
the world.  Plaintiffs have established strong reputations and substantial goodwill in Plaintiffs'
Marks by reason of the success and reputation of goods sold under Plaintiffs' Marks,
immediately indicating to the public that products and services featuring such marks come from,
or are sponsored or approved by, Plaintiffs.

91.     The Infringing Works, which are physically and materially different from the U.S.
editions of the Works authorized for sale in the United States, feature Plaintiffs' Marks on goods
which are not authorized to be sold in the United States and have caused, and are likely to
continue to cause, confusion, or mistake, or deception as to the affiliation, connection, or
association of Defendants with Plaintiffs or as to the sponsorship or approval of the Infringing
Works by Plaintiffs.

92.     Defendants have knowingly induced, caused, and materially contributed to the
unauthorized advertising and sale in the United States of physically and materially different
goods bearing marks that are identical to Plaintiffs' Marks, and are continuing to do so.  Such
conduct constitutes contributory trademark infringement, unfair competition, and false

designation of origin or false representation in violation of Plaintiffs' rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93.     On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

94.     Defendants' knowing and material contribution to the unauthorized use of Plaintiffs' Marks is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public until enjoined by this Court.  Plaintiffs have no adequate remedy at law.

95.     Upon information and belief, Defendants have received substantial revenues and substantial profits resulting from their contribution to the unauthorized use and exploitation of Plaintiffs' Marks to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' contribution to such unauthorized use and exploitation for which Defendants are responsible.

## FIFTH CLAIM FOR FALSE ADVERTISING
## UNDER SECTION 43(a) OF THE LANHAM ACT

96.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 95 above as if fully set forth herein.

97.     Defendants' use in commercial advertising and promotion of misrepresentations concerning the nature, characteristics, and qualities of the Infringing Works (e.g., use of photograph of U.S. hardcover textbooks and accompanying information about U.S. editions, including U.S. ISBN number and list price), including omissions of material facts regarding the Infringing Works (e.g., soft-cover, thinner paper, fewer colors, absence of supplements), and their false representation to U.S. consumers that the foreign versions of the Works listed for sale

are authorized for sale in the United States, constitute willful and knowing violations of Plaintiffs' rights under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

98.     Defendants have made these false and misleading representations of fact and omissions in order to take advantage of Plaintiffs' renown and reputation so as to induce consumers to purchase the Infringing Works from Defendants.

99.     On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

100.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and to deceive the public until enjoined by this Court. Plaintiffs have no adequate remedy at law.

101.    Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the their acts of false and misleading advertising to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' acts of false and misleading advertising, for which Defendants are responsible.

### SIXTH CLAIM FOR CONTRIBUTORY FALSE ADVERTISING UNDER SECTION 43(a) OF THE LANHAM ACT

102.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 101 above as if fully set forth herein.

103.    Defendants have induced, caused, and materially contributed to, and continue to induce, cause and materially contribute to, the use in commercial advertising and promotion of misrepresentations concerning the nature, characteristics, and qualities of the Infringing Works including the omission of material facts regarding the Infringing Works.  For example, defendants (i) actively facilitate, and/or fail to prohibit, the use by third parties of photographs and other information relating to the U.S. editions of the Works in connection with

advertisements for the Infringing Works; (ii) fail to monitor or to otherwise require that sellers of the Infringing Works disclose to U.S. consumers that such works are not authorized for sale in the United States; and (iii) permit sellers to misrepresent the nature, characteristics, and qualities of the Infringing Works by describing the Infringing Works as the "same" as the U.S. editions of the Works and/or otherwise permit sellers to omit material facts regarding the differences between the U.S. editions of the Works and the Infringing Works.   Such actions constitute willful and knowing violations of Plaintiffs' rights under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

104.    Defendants have knowingly engaged in such conduct in order to take advantage of Plaintiffs' renown and reputation so as to induce consumers to purchase the Infringing Works through Defendants' web site.

105.    On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

106.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public until enjoined by this Court. Plaintiffs have no adequate remedy at law.

107.    Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of their contributory acts of false and misleading advertising to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' contributory acts of false and misleading advertising, for which Defendants are responsible.

## SEVENTH CLAIM FOR RELIEF FOR COPYRIGHT
## INFRINGEMENT UNDER SECTIONS 106 AND 602 OF THE COPYRIGHT ACT

108.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 107 above as if fully set forth herein.

109.   Defendants' unauthorized reproduction of the covers of the Works on their ValoreBooks.com web site, and Defendants' sale of unauthorized reproductions of the Works in electronic form, violate Plaintiffs' exclusive rights under Section 106 of the Copyright Act, 17 U.S.C. § 106.  Defendants' importation and sale in the United States of foreign versions of the Works, which are all manufactured abroad and not authorized for sale in the United States, further violates Plaintiffs' exclusive rights under Sections 106 and 602 of the Copyright Act, 17 U.S.C. §§ 106 & 602.   In particular, Defendants have knowingly infringed upon Plaintiffs' exclusive rights to reproduce and distribute their copyrighted Works, as well as their rights to authorize and control such activities by licensees, within the meaning of Section 501 of the Copyright Act, 17 U.S.C. § 501.

110.   On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

111.   Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue to damage Plaintiffs until enjoined by this Court.  Plaintiffs have no adequate remedy at law.

112.   Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the reproduction, distribution, and sale of the Works to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' unlawful use of the Works, for which Defendants are responsible.

## EIGHTH CLAIM FOR RELIEF FOR
## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT UNDER
## SECTIONS 106 AND 602 OF THE COPYRIGHT ACT

113.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 112 above as if fully set forth herein.

114.   Defendants' have knowingly induced, caused, and materially contributed to, and continue to knowingly induce, cause, and materially contribute to, the unauthorized importation and sale in the United States of foreign versions of the Works, manufactured abroad and not authorized for sale in the United States, and Defendants have further failed to supervise, and continue to fail to supervise, the actions of third party sellers utilizing Defendants' web site.

115.   Moreover, Defendants have knowingly induced, caused, and materially contributed to the unauthorized reproduction and sale of the Works in electronic form (e.g., "Electronic Study Guides") and continue to do so, and have further failed, and continue to fail, to supervise the actions of third party sellers utilizing Defendants' web site to sell such pirated materials.

116.   Defendants conduct violates Plaintiffs' exclusive rights under Sections 106 and 602 of the Copyright Act, 17 U.S.C. §§ 106 & 602.  In particular, Defendants have knowingly and materially contributed to the infringement of Plaintiffs' exclusive rights to (i) import and distribute their copyrighted Works in the United States, (ii) reproduce their copyrighted Works, and (iii) authorize and control such activities by licensees, within the meaning of Section 501 of the Copyright Act, 17 U.S.C. § 501.

117.   On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

38

118.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue to damage Plaintiffs until enjoined by this Court.  Plaintiffs have no adequate remedy at law.

119.    Upon information and belief, Defendants have received substantial revenues and substantial profits resulting from their contribution to the reproduction, distribution, and sale of the Works to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' unlawful use of the Works, for which Defendants are responsible.

## NINTH CLAIM FOR RELIEF FOR
## COMMON LAW UNFAIR COMPETITION

120.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 119 above as if fully set forth herein.

121.    The aforesaid conduct of Defendants constitutes common law unfair competition in violation of applicable state law.

122.    On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

123.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and to deceive the public until enjoined by this Court. Plaintiffs have no adequate remedy at law.

124.    Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the unauthorized use and exploitation of Plaintiffs' Marks to which they are not entitled, and Plaintiffs have also suffered damages as a result of Defendants' use, and knowing inducement of use, of Plaintiffs' Marks, for which Defendants are responsible.

## TENTH CLAIM FOR RELIEF FOR DECEPTIVE AND
## UNFAIR TRADE PRACTICES UNDER N.Y. GEN. BUS. L. § 349

125.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 124 above as if fully set forth herein.

126.   Defendants' false advertising and unlawful distribution and sale of the Infringing Works constitute deceptive acts and practices in the conduct of their business, trade and commerce in violation of N.Y. Gen. Bus. L. § 349.

127.   Consumers, specifically including those within the State of New York, have reasonably relied and/or are likely to reasonably rely upon Defendants' deceptive conduct in making purchasing decisions, have been actually deceived and confused and are likely to be actually deceived and confused, and have been injured and damaged and are likely to be further injured and damaged by Defendants' conduct described herein.

128.   On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

129.   Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and the general public, and will continue both to damage Plaintiffs and to deceive the public until enjoined by this Court.  Plaintiffs have no adequate remedy at law.

130.   Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the foregoing unlawful conduct and knowing inducement of such unlawful conduct, to which they are not entitled, and Plaintiffs and the general public have also suffered damages as a result of Defendants' unlawful conduct for which Defendants are responsible.

## ELEVENTH CLAIM FOR RELIEF FOR CONTRIBUTORY DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER N.Y. GEN. BUS. L. § 349

131.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 130 above as if fully set forth herein.

132.    Defendants' have knowingly induced, caused, and materially contributed to the false advertising and the unauthorized distribution and sale of the Infringing Works. Such acts constitute deceptive acts and practices in the conduct of their business, trade and commerce in violation of N.Y. Gen. Bus. L. § 349.

133.    Consumers, specifically including those within the State of New York, have reasonably relied and/or are likely to reasonably rely upon Defendants' deceptive conduct in making purchasing decisions, have been actually deceived and confused and are likely to be actually deceived and confused, and have been injured and damaged and are likely to be further injured and damaged by Defendants' conduct described herein.

134.    On information and belief, Defendants' foregoing acts have been, and continue to be, willful, deliberate, and in bad faith.

135.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs and the general public and will continue both to damage Plaintiffs and to deceive the public until enjoined by this Court. Plaintiffs have no adequate remedy at law.

136.    Upon information and belief, Defendants have received substantial revenues and substantial profits arising out of the foregoing unlawful conduct and knowing inducement of such unlawful conduct, to which they are not entitled, and Plaintiffs and the general public have also suffered damages as a result of Defendants' unlawful conduct, and knowing inducement of such unlawful conduct, for which Defendants are responsible.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

1.      That Defendants, their agents, officers, franchisees, licensees, affiliates, principals, subsidiaries, parents, servants, representatives, employees, attorneys, shareholders, divisions, successors, and assigns, and all those in active concert or participation with them who receive notice of such judgment directly or otherwise, be preliminarily and permanently enjoined from infringing and contributing to the infringement of Plaintiffs' Marks, from falsely designating the origin, sponsorship, or affiliation of their business, goods or services, from contributing to the false designation of the origin, sponsorship, or affiliation of their business, goods or services, from infringing and contributing to the infringement of Plaintiffs' copyright rights in the Works, from unlawfully importing and contributing to the unlawful importation of foreign versions of Plaintiffs' Works into the United States for sale in the United States, from unfairly competing with Plaintiffs, from engaging in deceptive trade practices, and specifically from:

(a)      Imitating, copying, broadcasting, using, distributing, reproducing, displaying or authorizing any third party to imitate, copy, broadcast, use, distribute, reproduce or display any of Plaintiffs' Works or Marks, including works or marks that are substantially similar to the Plaintiffs' Works or Marks, or any one of them, in any form or medium without the express written authorization of Plaintiffs;

(b)      Using any symbols or elements or depictions which are confusingly similar to Plaintiffs' Works and Marks in any form or medium, in connection with any goods or services;

(c)     Making or displaying any statement or representation that is likely to lead the public or the trade to believe erroneously that Defendants' goods and services are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized, or franchised by or are otherwise connected with Plaintiffs;

(d)     Engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the Works, or of Plaintiffs' rights therein;

(e)     Directly or indirectly reproducing, adapting, distributing, publicly displaying, transmitting, offering, advertising, marketing, or otherwise exploiting, by any means, any material or product, in any form, bearing any unauthorized reproduction, imitation, or simulation, in whole or in part, of any of Plaintiffs' Works or Marks, including but not limited to the Infringing Works; and

(f)     Inducing, causing, aiding, assisting, abetting, or contributing to any other party in doing any act prohibited by sub-paragraphs (a) through (e) above.

2.     Directing that Defendants immediately remove from their ValoreBooks.com web site, and any related or affiliated web site, any and all postings of "International Editions" until such time that Defendants have developed a system for identifying and removing infringing postings and preventing the importation and sale of Plaintiffs' Works in the United States.

3.     Directing that Defendants immediately remove from their ValoreBooks.com web site, and any related or affiliated web site, any and all postings of "Electronic Study Guides" until such time that Defendants have developed a system for identifying and removing infringing postings and preventing the sale of pirated solutions manuals, ebooks, and other electronic reproductions of Plaintiffs' Works distributed without Plaintiffs' authorization.

4.      Directing that Defendants deliver up to be impounded, pending the outcome of this action, all Infringing Works in their possession, custody, or control.

5.      Directing that Defendants destroy all impounded Infringing Works upon the issuance of a permanent injunction in this action.

6.      Directing that Defendants adopt, implement, and enforce a policy that conforms to the requirements of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, respecting notice and take-down of infringing works, which includes, at a minimum, the following: (1) procedures for receipt of reports and/or notice of infringing listings, (2) procedure for expeditious removal of reported infringing listings, (3) proactive monitoring and removal of reported infringing listings, (4) policy for suspension of repeat offenders, (5) policy for disclosure of identity and contact information of alleged infringers, and (6) designation with the U.S. Copyright Office of a Registered Agent for posting.

7.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service offered or promoted by Defendants or any product displayed, broadcast, advertised, licensed, offered for sale, sold, or promoted by Defendants is authorized by Plaintiffs or related in any way to Plaintiffs and/or their products or services.

8.      Awarding to Plaintiffs:

(a)      all of Defendants' profits, gains and advantages realized by Defendants from their exploitation of Plaintiffs' Marks, wherever said exploitation took place, which are attributable to Defendants' acts of direct and contributory trademark infringement, unfair competition and deceptive trade practices, trebled pursuant to 15 U.S.C. § 1117;

(b)     all of the Defendants' profits, gains and advantages realized by Defendants from their exploitation of the Plaintiffs' Works, wherever said exploitation took place, which are attributable to Defendants' acts of direct, contributory, and vicarious copyright infringement or statutory damages pursuant to 17 U.S.C. § 504, in the amount of $150,000 for each work infringed;

(c)     all of the Defendants' profits, gains and advantages realized by Defendants from their exploitation of the Plaintiffs' Works and Marks, wherever said exploitation took place, which are attributable to Defendants' acts of deceptive acts and practices or statutory damages pursuant to N.Y. Gen. Bus. L. § 349(h);

(d)     exemplary and punitive damages as the Court finds appropriate to deter any future willful conduct; and

(e)     interest, including pre-judgment interest, on the foregoing sums.

9.      That Defendants be subject to a constructive trust and provide an accounting and disgorge and pay to Plaintiffs all direct and indirect gains, profits and advantages derived by said Defendants from their false designations and representations.

10.     That Plaintiffs have and recover their reasonable attorneys' fees.

11.     That Plaintiffs have and recover their costs in this civil action.

45

12.     That Plaintiffs have and recover such other and further relief as the Court may deem just and proper.

March 29, 2007

COVINGTON & BURLING LLP

Siobhan M. Stewart (SS 7449)
1330 Avenue of the Americas
New York, New York  10019
(212) 841-1000 (phone)
(646) 441-9093 (fax)
sstewart@cov.com (email)

--and--

Ronald G. Dove, Jr.
Hope Hamilton
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 662-6000 (phone)
(202) 778-5529 (fax)
rdove@cov.com (email)
hhamilton@cov.com (email)

*Counsel for Plaintiffs Pearson Education, Inc.,
John Wiley & Sons, Inc., Thomson Learning
Inc., and The McGraw-Hill Companies, Inc.*